SOUTHWESTERN BELL TEL. CO. *v.* SIEGLER

5-3761                                    398 S. W. 2d 531

Opinion delivered January 31, 1966

*Donald King* and *Bill R. Holland, Herschel H. Friday,* for appellant.

*McMath, Leatherman, Woods & Youngdahl,* By: *John P. Sizemore,* for appellee.

ED. F. McFADDIN, Justice. This is a workmen's compensation case; and the question to be decided is whether the appellant Company has made *advance payment of compensation* to the employee, Siegler, within the purview of Ark. Stat. Ann. § 81-1319(m) [Repl. 1960]. The Referee ruled for the Company; the Full Commission likewise ruled for the Company; but the Circuit Court reversed the Commission's ruling; and the Company prosecutes this appeal.

The appellant Company insists that the ruling by the Commission was a finding of fact, and, as such, is binding on the Circuit Court and also on this Court under our rule that the findings of fact of the Workmen's Compensation Commission have the force and effect of a jury verdict. *Wren* v. *Jones,* 210 Ark. 40, 194 S. W. 2d 896. But we reach the conclusion that the

ruling of the Commission in this case was a finding of law and not one of fact. This is true since the Commission's ruling was because of the wording of a written instrument called "The Plan," as hereinafter discussed, under which Plan all payments were made to the employee, Siegler. The interpretation of that plan is, therefore, a question of law.

W. O. Siegler, an employee of appellant, Southwestern Bell Telephone Company (hereinafter called "Company"), received an injury to his knee while in the course of his employment. He was totally disabled from September 5, 1963 through October 27, 1963, a period in excess of seven weeks. His rate of pay before his injury was $128.00 per week; and the Company continued to pay him that amount each week until October 27, 1963, said payments, totalling $972.80, having been made under the said "Plan" hereinafter mentioned.

Siegler suffered a residual permanent partial disability of 10% to his leg, for which he filed claim with the Workmen's Compensation Commission. For this permanent disability he claimed $612.50.[1]

The Company resisted the claim of $612.50, urging that the payment of the $128.00 per week for more than seven weeks had totalled $972.80, which was a greater amount than Siegler would have been entitled to receive under the workmen's compensation law, not only for loss of time but also for the residual disability.[2]

---

[1] At the hearing before the Referee, claimant's attorney stated: "The only question is whether or not the company has satisfied the requirement of the workmen's compensation law for payment of permanent disability by reason of his disability." Siegler's claim for $612.50 for permanent partial disability was calculated by him in accordance with the Workmen's Compensation Law at $35.00 per week for 17½ weeks, which is 10% of the statutory allowance of 175 weeks.

[2] It was shown that under the Workmen's Compensation Law Siegler would have been entitled to $265.00 for temporary total

Siegler claimed that the $972.80 was for *benefits* and not for *compensation*, and that these benefits had been paid to him because of the "Plan for Employees' Pensions, Disability Benefits, and Death Benefits," which was a plan put into effect by the Southwestern Bell Telephone Company many years ago; and Siegler claimed that the amount he received from this Plan had nothing to do with what was due him for compensation for his partial disability. The Company claimed that these payments were an *advance payment of compensation for disability.*

Our Workmen's Compensation statute (Ark. Stat. Ann. § 81-1319(m) [Repl. 1960]) reads:

"Credit for compensation or wages paid. If the employer has made advance payments of compensation he shall be entitled to be reimbursed out of any unpaid instalment or instalments of compensation due. If the injured employee receives full wages during disability he shall not be entitled to compensation during such period."

Under this statute, if the Company made *advance payments of compensation* to Siegler, then the present claim must be disallowed. If the payment made by the Company to Siegler was anything other than "advance payment of compensation," then Siegler is entitled to recover. Such is the question here to be resolved.

Beginning in 1913 the Southwestern Bell Telephone Company put into effect a company plan whereby, under certain conditions, its employees would receive "pensions, disability benefits, and death benefits"; and from time to time the plan has been amended. This was a unilateral plan put into effect by Southwestern Bell

---

disability for the seven and a fraction weeks; and then would have been entitled to $612.50 for permanent partial disability to his leg. These amounts would total $877.50. The Company had already paid Siegler $972.80, and therefore insisted that this amount more than paid for Siegler's loss of time and also partial disability of $612.50.

Telephone Company; and the employees made no contribution[3] whatsoever to the plan. The plan was administered entirely by a committee appointed by the Company, even though the plan had been recognized in the Collective Bargaining Agreement. It was under this Plan that Siegler received $128.00 a week from September 5, 1963 to October 27, 1963, which amount was exactly the same as his wages.

We reach the conclusion that the payments made under the Company Plan were "benefits" and were not *advance payments of compensation*. The Plan is contained in a 28-page printed booklet which is an exhibit in this case. Throughout the entire booklet the amount that a worker would receive is either a "pension" if he retires at the end of his service, or is a "benefit" if he is paid for loss of time or disability. It is never called "advance payment of compensation."[4] The burden was on the Company to establish that the payments which Siegler had received were *advance payments for compensation* for his permanent partial disability. The language of the Plan does not state that any of the weekly payments of benefits under the Plan would be considered as *advance payments of*

[3] Ark. Stat. Ann. § 81-1320 (b) (Repl. 1960) of our Workmen's Compensation Law reads: "No agreement by an employee to pay any portion of the premium paid by his employer to a carrier or to contribute to a benefit fund or department maintained by such employer for the purpose of providing compensation or medical services and supplies, as required by this act [§§ 81-1301—81-1349] shall be valid, . . ." Under this section if the employee had made any contribution to the "Plan" no part of any payment made under the Plan could ever have been considered as an offset against workmen's compensation benefits.

[4] In Section 8, paragraph 27 of the Plan for Employees' Pensions, Disability Benefits, and Death Benefits, these words appear: "In case any benefit or pension, which the Committee shall determine to be of the same general character as a payment provided by the Plan, shall be payable under any law now in force or hereafter enacted to any employee of the Company, to his beneficiaries or to his annuitant under such law, the excess only, if any, of the amount prescribed in the Plan above the amount of such payment prescribed by law shall be payable under the Plan . . ."

*compensation for a permanent disability that might or might not later arise.* Our view on this is materially strengthened because throughout the language of the printed booklet containing the Plan, the amounts that the worker is to receive are called "benefits"; and there are a number of cases which hold that there is a material difference between money received as "benefits" and money received as "compensation."

In *Staley* v. *Ill. Central*, 268 Ill. 356, 109 N. E. 342, L. R. A. 1916A 450 (1915), there is this sentence: "The words 'insurance relief,' 'benefit,' or 'indemnity,' would, none of them, in the connection in which they are used, seem to include the compensation to be paid under the Workmen's Compensation Act." In *DiCicco* v. *Industrial Comm.*, 11 Ohio App. 271 (1919), there is this sentence: "In the Workmen's Compensation Law a very clear distinction is made between 'compensation' and 'benefits.' " And in *Terry* v. *General Electric*, 232 N. Y. 120, 133 N. E. 373 (1921) there is this sentence: "A distinction is made between compensation and benefits."

The money which Siegler received might have been either (a) *wages,* (b) *gratuities,* (c) *benefits,* or (d) *advance payment of compensation.* Until the Company showed that under the Plan such payment could have been nothing except *advance payment of compensation,* the Company failed to establish its case. The Company relies on our case of *Lion Oil Co.* v. *Reeves,* 221 Ark. 5, 254 S. W. 2d 450; and also relies on cases decided in other jurisdictions involving this or similar benefit plans; some of such cases being: *Hurd* v. *Ill. Bell Tele. Co.,* 136 F. Supp. 125, affd. 234 F. 2d 942; *Tyler* v. *N. Y. Tele. Co.,* 192 F. Supp. 52; *American Fed. of Labor* v. *Western Union,* 179 F. 2d 535; *Potlatch Forest* v. *International Woodworkers,* 108 F. Supp. 906, affd. 200 F. 2d 700; and *Lewis* v. *Quality Coal Corp.,* 270 F. 2d 140.

Siegler relies on our holding in *Looney* v. *Sears Roebuck,* 236 Ark. 868, 371 S. W. 2d 6; and also cites

to us many cases from other jurisdictions.[5] We have limited the holding in *Lion Oil Co.* v. *Reeves, supra,* to its own particular facts: our holding in *Looney* v. *Sears Roebuck* so stated. The effect of the last mentioned case was to hold that only where the company clearly established that the amount received was an *advance payment of compensation* could the company be entitled to any offset. In all other instances the employee could recover for his disability. We consider the case at bar to be ruled by *Looney* v. *Sears Roebuck,* and therefore affirm the judgment of the Circuit Court.

Affirmed.

COBB, J., not participating.

---

[5] Some of these are: *Montgomery County* v. *Kaponin* (Md.), 205 A. 2d 292; *Williams* v. *Dept. of Welfare* (N. J.), 129 A. 2d 56; *Leaver* v. *Midvale Co.* (Pa.), 57 A. 2d 698; *Creighton* v. *Continental Co.* (Pa.), 38 A. 2d 337; *Bobertz* v. *Hillside* (N. J.), 14 A. 2d 495; *DiMeglio* v. *Slonk Const. Co.* (N. J.), 2 A. 2d 470; *Zbirowski* v. *John T. Lewis* (Pa.), 196 A. 606; *Crane Co.* v. *Loome* (Ill.), 165 N. E. 2d 728; *Fabian* v. *Link Division*, 253 N. Y. S. 2d 175; *Gudmendsen* v. *Olin Mathieson*, 223 N. Y. S. 2d 249; *Stewart* v. *First National City Bank*, 222 N. Y. S. 2d 374; *Pilger* v. *Westchester County*, 131 N. Y. S. 2d 795; *City Council of Augusta* v. *Young* (Ga.), 127 S. E. 2d 904; *Butler* v. *Lee* (Ga.), 102 S. E. 2d 498; *City of Palo Alto* v. *Industrial Accident Commn.* (Cal.), 345 P. 2d 586; *Pope* v. *Coney* (La.), 119 So. 2d 136; *Anderson* v. *City of Miami* (Fla.), 101 So. 2d 612; *American Bridge Division* v. *McClung* (Tenn.), 333 S. W. 2d 557; and *Krupp* v. *J. C. Penney Co.* (Ariz.), 75 P. 2d 692.