Calvin D. DOOLEY *v.* AUTOMATED CONVEYOR
SYSTEMS, INC., and Fremont Compensation

CA 03-459                                    143 S.W.3d 585

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered January 28, 2004

*Fogleman & Rogers*, by: *Joe M. Rogers*, for appellant.

*Roberts Law Firm, P.A.*, by: *Bruce D. Anible* and *John D. Webster*, for appellees.

JOHN F. STROUD, JR., Chief Judge. This is a workers' compensation case in which appellant, Calvin Dooley, sustained a back injury while working for appellee, Automated Conveyor Systems, Inc. Appellee and its workers' compensation carrier, appellee Fremont Compensation, refused to pay appellant's medical expenses. Consequently, those expenses were partially paid by appellant's health-care-plan provider. Following a hearing on his workers' compensation claim, the ALJ determined that appellant's injury was compensable and awarded benefits. Appellant subsequently sought a clarification of the ALJ's ruling concerning the issue of whether appellees were entitled to an offset for the medical expenses that were paid by the health-care-plan provider. The record was supplemented to show that the employer was self-insured with respect to the employees' health-care plan and that both the employer and the employees contributed to the cost of the plan. The ALJ then ruled that appellees were entitled to an offset for the benefits paid by the health-care plan, pursuant to Arkansas Code Annotated section 11-9-411 (Repl. 2002), and that the constitutional argument raised by appellant was not timely made. The Commission affirmed the ALJ

with respect to the offset, but determined that the constitutional issue had been timely made. Even so, the Commission found that the constitutional challenge was without merit. This appeal followed. We affirm.

For his first point of appeal, appellant contends that the Commission "erred in concluding that the offset provisions of Arkansas Code Annotated section 11-9-411 apply to group health plan benefits regardless of whether the premiums therefor are paid by the employer or the employee."[1] We find no error.

■ Our review is *de novo* because it is for our appellate courts to decide what a statute means. *South Central Arkansas Elec. Coop. v. Buck*, 354 Ark. 11, 117 S.W.3d 591 (2003). Arkansas Code Annotated section 11-9-411 (Repl. 2002) provides:

11-9-411. Effect of payment by other insurers.

(a) *Any benefits payable to an injured worker under this chapter shall be reduced in an amount equal to, dollar-for-dollar, the amount of benefits the injured worker has previously received for the same medical services or period of disability, whether those benefits were paid under a group health care service plan of whatever form or nature, a group disability policy, a group loss of income policy, a group accident, health, or accident and health policy, a self-insured employee health or welfare benefit plan, or a group hospital or medical service contract.*

(b) The claimant shall be required to disclose in a manner to be determined by the Workers' Compensation Commission the identity, address, or phone number of any person or entity which has paid benefits described in this section in connection with any claim under this chapter.

(c)(1) Prior to any final award or approval of a joint petition, the claimant shall be required to furnish the respondent with releases of all subrogation claims for the benefits described in this section.

---

[1] As noted by the Commission in its opinion, the ALJ did not award any temporary disability benefits, and appellant did not appeal the ALJ's decision in that regard to the Commission. Consequently, as found by the Commission, appellant failed to establish that he was harmed by section 11-9-411 as it may apply to disability benefits, and his constitutional challenge in that regard has been rendered moot by the lack of any award of disability benefits. Therefore, to the extent that appellant may include disability benefits in his arguments on appeal to this court, they are not preserved and we do not address them.

(2)(A) In the event that the claimant is unable to produce releases required by this section, then the commission shall determine the amount of such potential subrogation claims and shall direct the carrier or self-insured employer to hold in reserve only said sums for a period of five (5) years.

(B) If, after the expiration of five (5) years, no release or final court order is presented otherwise directing the payment of said sums, then the carrier or self-insured employer shall tender said sums to the Death and Permanent Total Disability Trust Fund.

(Emphasis added.) In developing his argument, appellant acknowledges that subsection (a) does not specify that any such policy or plan must be funded solely by the employer before an offset can occur. He argues, however, that it is the only reasonable construction of the statute. We do not agree.

In *American Standard Travelers v. Post*, 78 Ark. App. 79, 82, 77 S.W.3d 554, 555 (2002), we explained the basic rules of statutory construction:

[W]e recognize that the basic rule of statutory construction to which all other interpretive guides must yield is to give effect to the intent of the legislature. *Kildow v. Baldwin Piano & Organ*, 333 Ark. 335, 969 S.W.2d 190 (1998). Arkansas Code Annotated section 11-9-704(c)(3) (Repl. 1996) states that we are to construe the workers' compensation statutes strictly. Strict construction requires that nothing be taken as intended that is not clearly expressed. *Edens v. Superior Marble & Glass*, 346 Ark. 487, 58 S.W.3d 369 (2001). The doctrine of strict construction is to use the plain meaning of the language employed. *Wheeler Const. Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001). Where the language of a statute is unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Leathers v. Cotton*, 332 Ark. 49, 52, 961 S.W.2d 32, 34 (1998). In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* The statute should be construed so that no word is left void, superfluous, or insignificant; and meaning and effect must be given to every word in the statute if possible. *Locke v. Cook*, 245 Ark. 787, 434 S.W.2d 598 (1968).

The language of section 11-9-411(a) is clear. It is evident that the legislature intended for the amount of workers'

compensation benefits payable to an injured worker to be reduced "dollar-for-dollar" by the amount of benefits that the worker has previously received for the same medical services under any of the listed group plans. Appellant's construction of this section would require that we find an intention to allow offsets only in cases where the employer alone funded the plan — something that is not clearly expressed in the statutory language. Moreover, appellant notes that the initial clause in section 11-9-411(a) provides, "benefits payable to an injured employee . . . ." He contends that a strict construction of this language precludes an offset for medical expenses that were paid directly to a medical provider instead of to the injured employee. Again, we do not agree. Using the plain meaning of the language employed in this clause, it is clear that medical expenses that are paid directly to a medical provider are paid on behalf of the injured employee and are thus "payable" to the employee.

The case law relied upon by appellant in support of his position preceded the 1993 amendment of our workers' compensation laws, and, in particular, preceded the enactment of section 11-9-411(a). He relies upon pre-1993 cases, *i.e.*, those decided prior to the enactment of section 11-9-411 as part of a comprehensive revision of the Arkansas workers' compensation laws. In the pre-1993 cases, no offset was allowed for payments made from private insurance or plans unless the employer could establish clearly that the claimant had received payments from insurance provided by the employer and that sums paid to the injured employee were intended as advance payments of compensation. *See, e.g., Riverside Furn. Co. v. Loyd*, 42 Ark. App. 1, 852 S.W.2d 147 (1993); *Southwestern Bell Tel. Co. v. Siegler*, 240 Ark. 132, 398 S.W.2d 531 (1966). A critical factor in these cases was whether the premiums were paid by the employees or the employer. Here, the health plan was funded by contributions from both the employer and the employee. Appellant contends that the Commission's decision is therefore clearly contrary to the cited case law. Appellant's reliance upon these pre-1993 cases is misplaced because they are simply no longer controlling.

Appellant next argues under this point that construing section 11-9-411(a) to allow an offset for group health or disability benefits contributed to by the employee is, in effect, contributing to the cost of his workers' compensation benefits in violation of

Arkansas Code Annotated section 11-9-109 (Repl. 2002). However, appellant's reliance upon section 11-9-109 is misplaced. Section 11-9-109 provides:

*Agreement to pay premium void.*

(a) No agreement by an employee to pay any portion of the premium paid by his or her employer to a carrier or to contribute to a safety program as provided under § 11-9-409 or a benefit fund or department maintained by the employer for the purpose of providing compensation or medical services and supplies as required by this chapter shall be valid.

(b) Any employer who makes a deduction for those purposes from the pay of any employee entitled to the benefits of this chapter shall be guilty of a Class D felony.

The short answer to appellant's argument in this regard is that there was neither an agreement by appellant to pay a portion of the workers' compensation premium nor a deduction for that purpose from his paycheck. Moreover, we do not agree that allowing offsets pursuant to the clear language of section 11-9-411(a), in effect, violates section 11-9-109.

For his last subpoint under this point of appeal, appellant contends that section 11-9-411 "contains inconsistencies that prohibit an offset." The alleged inconsistency lies in 11-9-411(c)(1), which requires the claimant to furnish the respondent with a release of all subrogation claims for the benefits described in this section. Appellant argues that the only way the claimant can provide for such a release is for the respondents to pay the group-medical-expense provider all sums it may have paid, which precludes it from being granted an offset. We disagree.

In its opinion in this case, the Commission addressed this portion of appellant's argument as follows:

As we understand operation of the statute . . . a workers' compensation carrier will hold in reserve and ultimately reimburse a group carrier for those medical benefits paid for by the group carrier. The workers' compensation carrier will also take a dollar-for-dollar offset (i.e., not pay the claimant or the medical provider) for benefits described in Section 411(a), and the group carrier will provide a release of any potential subrogation claims once it has been

reimbursed by the workers' compensation carrier for those medical benefits already paid for by the group carrier. Consequently, we see no merit in the claimant's argument on appeal that the requirements of Ark. Code Ann. § 11-9-411(c)(1) render impossible the dollar-for-dollar offset provided to the workers' compensation carrier under Ark. Code Ann. § 11-9-411(a).

The interpretation given a statute by the agency charged with its administration is highly persuasive, and while not conclusive, it should not be overturned unless it is clearly wrong. *Death & Perm. Dis. Trust v. Anderson*, 83 Ark. App. 230, 125 S.W.3d 819 (2003). We find nothing clearly wrong with the Commission's interpretation of section 11-9-411(c).

For his second point of appeal, appellant contends that the Commission "erred in concluding that Arkansas Code Annotated section 11-9-411 is constitutional as applied in allowing an employer and its workers' compensation carrier to claim an offset for group health plan benefits contributed to by the claimant employee." Again, we find no error.

■ As explained in *Ester v. National Home Centers, Inc.*, 335 Ark. 356, 364, 981 S.W.2d 91, 96 (1998):

> All statutes are presumed constitutional and we resolve all doubts in favor of constitutionality. *Golden v. Westark Community College*, 333 Ark. 41,969 S.W.2d 154 (1998); *ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997); *McCutchen v. Huckabee*, 328 Ark. 202, 943 S.W.2d 225 (1997). The party challenging a statute's constitutionality has the burden of proving that the act lacks a rational relationship to a legitimate objective of the legislature under any reasonably conceivable set of facts. *Arkansas Hosp. Ass'n v. Arkansas St. Bd. of Pharmacy*, 297 Ark. 454, 763 S.W.2d 73 (1989); *Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). *See also Smith v. Denton*, 320 Ark. 253, 895 S.W.2d 550 (1995); *Winters v. State*, 301 Ark. 127, 782 S.W.2d 566 (1990). It is not our role to discover the actual basis for the legislation. *Arkansas Hosp. Ass'n, supra; Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). We merely consider whether there is any rational basis which demonstrates the possibility of a deliberate nexus with state objectives so that the legislation is not the product of arbitrary and capricious government purposes. If we determine that any rational basis exists, the statute will withstand constitutional challenge. *See Arkansas Hosp. Ass'n., supra.*

Appellant's constitutional challenge lies in the Commission's interpretation of section 11-9-411 to allow employers an offset for medical benefits partially paid by group plans, which have been funded in part by employee contributions. He contends that if the Commission correctly interpreted the statute in that manner, then it is unconstitutional. He argues that workers' compensation benefits are provided by employers in exchange for employees' forbearance from suing the employer in tort; that as such they are valuable benefits; that those benefits cannot be denied or taken away for constitutionally impermissible reasons; that property interests are constitutionally protected and no state can deprive one of his property without due process of law; and that if those rights are so denied, Article 2, Section 13, of the Constitution of Arkansas entitles the aggrieved party to a remedy in the law.

In addressing appellant's constitutional challenge, the Commission explained:

> [W]e understand the provisions of Section 411 to protect third-party payors of medical benefits, and to provide a means for those third-party payors to recover their payments *from* the workers' compensation carrier who is ultimately liable for payment of those medical benefits under the statutory provisions cited by the claimant's brief. We find that Ark. Code Ann. § 11-9-411 is rationally related to a legitimate governmental interest in providing a means for third-party payors of medical benefits to recover their payments from the workers' compensation carrier who is obligated under the workers' compensation law to pay for those medical benefits, as well as a legitimate governmental interest in controlling insurance costs by eliminating the double recovery of medical costs that the claimant apparently seeks in the present case. We point out that, by explicitly providing a means for reimbursement to group carriers from workers' compensation carriers for injuries ultimately determined to be work related, Section 411 also appears to, at least in part, remove a disincentive group carriers might otherwise have had under prior law to avoid making any medical payments until after an injury has been adjudicated either work related or nonwork related.

Appellant simply did not meet his burden of proving that the act lacks a rational relationship to a legitimate objective of the legislature, and the Commission's explanation of the statute's purpose demonstrates the possibility of a deliberate nexus with state objectives so that the legislation is not the product of arbitrary and capricious government

purposes. We find that a rational basis exists for the statute, and that it therefore withstands appellant's constitutional challenge.

Affirmed.

PITTMAN, GLADWIN, and ROBBINS, JJ., agree.

BAKER and ROAF, JJ., dissent.

KAREN R. BAKER, Judge, dissenting. Appellant, Calvin Dooley, was awarded benefits for injuries he sustained to his back while working for appellee, Automated Conveyor Systems, Inc. He challenges the Arkansas Workers' Compensation Commission's conclusion that the offset provisions of Arkansas Code Annotated section 11-9-411 (Repl. 2002) apply to group health plan benefits regardless of whether the premiums are paid by the employer or the employee. I agree that to allow an offset for group health or disability benefits contributed to by the employee is, in effect, contributing to the cost of workers' compensation benefits in violation of section 11-9-109. Appellant also asserts that the Commission erred in concluding that the statute is constitutional as applied in allowing an employer and its workers' compensation carrier to claim an offset for group health plan benefits contributed to by the claimant employee. I agree and would reverse.

Arkansas Code Annotated section 11-9-411 (Repl. 2002) was amended in 1993. Prior to the amendment:

> As a general rule, there is ordinarily no reduction of compensation benefits because of payments made from private pensions or health and accident insurance, whether provided by the employer, union, or the claimant himself. However, the employer may be entitled to a setoff where the employer clearly establishes that (1) the claimant has received payments from insurance provided by the employer, and (2) sums paid to the injured employee were intended as advance payments of compensation. *See Varnell v. Union Carbide*, 29 Ark.App. 185, 779 S.W.2d 543 (1989). Only where the employer clearly establishes that sums paid to an injured employee are advance payments of compensation is the employer entitled to any setoff; in all other situations, the employee recovers the full amount of his disability benefits provided under the Workers' Compensation Act. *Varnell v. Union Carbide, supra.*
>
> In *Emerson Electric v. Cargile*, 5 Ark. App. 123, 633 S.W.2d 389 (1982), we concluded that: [W]here the insurance, whether private

or company administered, is provided and funded by the employer the rule announced in *Southwestern Bell Telephone Company [v. Siegler*, 240 Ark. 132, 398 S.W.2d 531 (1966)] should be followed and the employer afforded the right to show, if he can, that the payments were 'payments of compensation in advance.'

*Riverside Furniture Co. v. Loyd*, 42 Ark. App. 1, 4-5, 852 S.W.2d 147, 149-50 (1993).

The majority dismisses the entire reasoning of these cases because they predate the 1993 amendment. The cases, however, analyzed the availability of setoff in the context of what is now section 11-9-807. The legislature did not change the provisions of that statute in the 1993 comprehensive revision of the workers' compensation laws. With the exception of pronoun usage, at the time of those cases through today, the section provides:

(a) If the employer has made advance payments for compensation, the employer shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due.

(b) If the injured employee receives full wages during disability, he or she shall not be entitled to compensation during the period.

Ark. Code Ann. § 11-9-807 (Repl. 2002).

In *Emerson, supra*, this court addressed for the first time whether benefits from private insurance could be setoff pursuant to the workers' compensation statutes. After citing the previous statutory citation of Arkansas Code Annotated section 11-9-807, Ark. Stat. Ann. § 81-1319(m) (Repl. 1976), the court reasoned:

No cases have been cited to us in which our court has addressed the question of whether or not benefits paid under private insurance may be considered advance payments for compensation. We conclude that the sounder rules to apply are that where the insurance, whether private or company administered, is provided and funded by the employer the rule announced in *Southwestern Bell Telephone Company, supra*, should be followed and the employer afforded the right to show, if he can, that the payments were "payments of compensation in advance." But where, as here, the employer does no more than to make the group coverage available at the employee's sole expense, no setoff should be allowed. Since the policy of insurance issued to the employee at his sole expense is a matter of

> private contract it could not affect the rights of the injured employee to recover under the compensation law or be considered as payments of compensation in advance. Under our statute only compensation paid in advance may be setoff against an award. *Southwestern Bell Telephone Co. v. Siegler, supra.* We conclude that private insurance procured by the employee does not come within that provision of our statute.

*Emerson Elec. v. Cargile,* 5 Ark. App. at 126, 633 S.W.2d at 390. The focus of the court's analysis was whether the employer intended the private insurance to be advanced payments for compensation. If the employer did not intend for the benefits paid under private insurance to be advanced payments for compensation, then our statute does not allow setoff. The court in *Emerson* specifically concluded that private insurance procured by the employee does not come within that provision of our workers' compensation statutes. Although the employee in *Emerson* paid the entire premium rather than a portion of the premium, the statutory prohibition against an employee providing funds "to pay any portion of the premium" for insurance required by our workers' compensation law still applies.

Arkansas Code Annotated section 11-9-109 (Repl. 2002) provides that employers, not employees, are responsible for providing workers' compensation coverage and that employers attempting to shift this burden to employees shall be guilty of a Class D felony. The majority concludes that there was neither an agreement by appellant to pay a portion of the workers' compensation premium nor a deduction for that purpose from his paycheck. However, the effect of the majority's decision is to reimburse the worker's compensation carrier with money from private insurance obtained with premiums paid by the employee. The statute specifically prohibits *any portion of the premium* being paid by the employee.

If the majority's position is that the employer intended for the employee to pay premiums for health care intended to advance payment for medical services required to be paid pursuant to the workers' compensation statutes, then the employer is guilty of a Class D felony. If not, section 11-9-411 unconstitutionally limits the worker's rights in law through contract. As the appellant points out, the workers' compensation carrier has no rights to that third-party contractual obligation. *Emerson, supra,* and *Moore v.*

*Pulaski County Special Sch. Dist.*, 73 Ark. App. 366, 43 S.W.3d 204 (2001). Therefore, we should reverse.

ROAF, J., joins.